NATIONAL BANK OF NORTH AMERICA *vs.* THE NORWICH SAVINGS
SOCIETY AND OTHERS.

A savings bank held a first mortgage on certain real estate in Connecticut for
$12,000; the petitioners, a bank located in the state of Massachusetts, a second
mortgage for $25,000; the value of the property was $75,000. The savings
bank brought a bill for a foreclosure against the present petitioners and the
mortgagor, the only service made upon the present petitioners being by notice
sent by mail by order of the court. This notice was never received, and they
had no actual notice of the suit until after a decree had been passed and the
time limited for redemption had expired. Held that upon these facts alone
they were clearly entitled to a decree opening the foreclosure and limiting a
further time for redemption.

It further appeared that one *V*, one of the managers of a manufacturing com-
pany which was the mortgagor, and who was individually a guarantor of the
mortgage debt due the savings bank, had shortly before the expiration of the
time for redemption entered into a written agreement with the savings bank,
that if the present petitioners did not redeem, the premises should be conveyed
to him on his payment of the debt due the savings bank, and on the expi-
ration of the time limited without redemption he had paid the savings bank
$500 toward the debt, which was to be forfeited if he did not pay the entire
debt within a time agreed. Held that, supposing *V* to have acted in good
faith, he took only the rights of the savings bank, and that he could suffer no
injury inasmuch as he could recover back the $500 as money paid under a
mistake and upon a consideration that had failed.

It further appeared that *V* had assigned to *S* his contract with the savings bank
and that *S* had loaned him $15,000 thereon; that a certificate of the foreclos-
ure had been filed with the town clerk by the savings bank and had been re-
corded according to law, and that the town clerk had made a certificate that
the record title was complete in the savings bank, which was delivered by *V*
to *S*, and that upon the faith of this certificate *S* had taken the assignment
of *V's* contract and paid him the money. It did not appear that *V* was insolv-
ent. Held that *S* had acquired only the rights of *V* and of the savings bank,
and had no equity that could prevail over that of the petitioners.

BILL IN EQUITY for the opening of a decree and for an in-
junction; brought to the Superior Court in New London
County. The respondents were the Norwich Savings Society,
Thomas J. Vail, Charles Storrs, and Augustus Storrs. The
following facts were found by the court:

On the 28th day of June, 1860, the Curtisville Manufac-
turing Company, a corporation located at Glastonbury in this
state, mortgaged certain real estate situated in Glastonbury,
then owned by the corporation in fee simple, to the Norwich

Savings Society, to secure a note of $12,000. On the 26th of September, 1863, the Curtisville Manufacturing Company conveyed the mortgaged premises to the Connecticut Arms & Manufacturing Company, a corporation located at Glastonbury, subject to the mortgage. On the 30th of September, 1863, the last named corporation made a second mortgage of the premises to Joseph A. Veazie, of Boston, in the state of Massachusetts, to secure a bond of the corporation for $35,000, conditioned on the payment to Veazie of $25,000 and interest; which bond and mortgage were afterwards assigned for a full consideration to, and have ever since been held by, the National Bank of North America, the petitioners in the present case, a banking corporation located at Boston, in the state of Massachusetts.

On the 25th day of January, 1869, the Bank of North America brought a petition to foreclose the second mortgage against the Connecticut Arms & Manufacturing Company, Joseph A. Veazie and others, returnable to the Superior Court for Hartford County, and at the March term, 1869, a decree of foreclosure was passed, which afterwards became absolute against all the respondents by their failure to redeem.

On the 11th day of March, 1869, the Norwich Savings Society brought its petition to foreclose its mortgage to the March term of the Superior Court for New London County, against the Connecticut Arms & Manufacturing Company, the Bank of North America, and other parties interested, and procured an order of notice, signed by the clerk of the Superior Court for the county of Hartford, ordering that notice of the pendency of the petition be given to the Bank of North America, among others, by depositing in the post office, in the city of Hartford, a true and attested copy of the petition and order post paid, and directed to "The National Bank of North America, Boston, Mass." The copy was so deposited, by a deputy sheriff of the county of Hartford, within the time limited by the order, to wit, on the 18th day of March, 1869, but was never received by the petitioners or any of the officers or agents of the bank, nor did the petitioners have any knowledge of the proceeding to foreclose the mortgage until

after the time limited in the decree for the redemption of the mortgage had expired.

Before the bringing of the petition by the Savings Society, the counsel of the bank requested the counsel of the Savings Society, who had the matter in charge, not to take any measures to foreclose the mortgage without giving him notice, in order that the mortgage debt might be paid without a foreclosure, and the counsel for the Savings Society undertook so to do.

The interest on the first mortgage debt had then been in arrears and unpaid from the first day of June, 1867, and the Savings Society was anxious to have the same paid, which the Bank of North America and its counsel well knew, but the bank was desirous of disposing of its interest in the property to some other party, and thus avoid any further expense upon the property. The debt not being paid, and the interest still remaining unpaid, the Savings Society directed its counsel to wait no longer, but to bring suit, and though its counsel and the counsel of the petitioners had conversation on the subject of bringing the suit, no notice was given the counsel of the petitioners of the actual bringing, or of the pendency of the suit, and the counsel of the petitioners were ignorant of the same.

At the return day of the petition the same was duly returned to and entered in the docket of the court, but none of the respondents therein appeared, except one Henry Hammond, an attaching creditor, and on the 11th day of May, 1869, and at the March term of the court, all the rest of the respondents were defaulted, and a decree was passed finding the amount due to the Norwich Savings Society to be $13-902.33 principal and interest, and costs taxed at $49.15, and limiting a time for redemption by the several parties respondent, which time expired on the 23d day of August, 1869. None of the respondents in the suit having paid the sums fixed by the decree within the time limited, the Norwich Savings Society on the 25th of August, 1869, caused to be recorded on the Glastonbury town records a certificate of the foreclosure, in conformity to law.

Thomas J. Vail, one of the present respondents, on the 16th day of August, 1869, entered into a written agreement with the Norwich Savings Society, which, after referring to the decree of foreclosure and the limitation of the 4th Monday of August, 1869, as the time for redemption, proceeded as follows:—

"Now, therefore, in consideration of the premises, and of one dollar to them in hand paid by the said Vail, and of the covenants of said Vail hereinafter contained, the said Norwich Savings Society hereby agrees with said Vail, that, in case payment of the sum found due by said decree shall not have been made, with interest, by any of the parties thereto, who have at the time of payment the right of redeeming said mortgaged premises, on or before the said fourth Monday of August, 1869, and the title to said mortgaged premises has then become absolute in said Society, upon the payment by said Vail, at the office of said Society in Norwich, on or before the 23d day of December, 1869, of $13,951.48, and interest thereon from May 11th, 1869, said Society will then, but not otherwise, convey to said Vail, or to his order, by quitclaim deed, said mortgage note, and all their right and interest in said mortgaged premises acquired by virtue of said mortgage and said decree. But it is furthermore agreed as part of this contract, that said Vail shall have the right to pay said sum and interest to said Society at any time prior to said 23d day of December, (in case the said decree has not been complied with by any of the parties thereto on or before the fourth Monday of August, 1869,) but if the same shall not be paid in full, with the interest thereon, on or before said 23d day of December, 1869, by the said Vail, then this contract shall become void, and the said Society shall be under no obligation, in law or in equity, to convey their interest in said premises to said Vail at any time. And it is further provided that if, on or before the fourth Monday of August, 1869, either of the parties to said decree who by its terms have the right to redeem said mortgaged premises, shall offer to pay to said Society the sum found due by said decree and interest, said Society may receive the same, and upon said

payment of said sum and interest, this contract shall become void, and neither party shall have any claim in law or in equity against the other. But if such payment shall not be made as aforesaid, then the said Vail in consideration of the premises covenants and agrees to and with the said Norwich Savings Society, that he will, on or before the 23d day of December, 1869, pay or cause to be paid to them said sum of $13,951.48, and interest thereon from May 11th, 1869, and will also, at his sole expense, until such payment shall be made, take proper care of said mortgaged premises after the 23d day of August, 1869, provided said decree of foreclosure shall fully take effect; and for that purpose, at his own sole expense, will employ and keep two good and competent watchmen upon the premises, one to serve by day and the other by night, until the payment of the sum and interest aforesaid; and also at his own expense will cause the factory building on said premises to be insured in good companies in the name of said Norwich Savings Society, to an amount not less than $5,000, till such payments shall be made, and deliver said policies to said Society; and will further, as pledge and security for fulfilling his covenants aforesaid, put into the hands of Franklin Nichols, of said Norwich, the sum of $500, which sum if said Vail shall fulfill all his covenants aforesaid, shall go to and be a portion of the said sum of $13,951.48 and interest thereon as aforesaid, to be paid by said Vail for said premises; but in case of his failure to make said payment within the time aforesaid for such payment, and failure to fulfil his covenants and agreements herein contained, then said sum of $500 shall be by him forfeited to said Norwich Savings Society, and by them be received and held to their own use as damages for such failure of performance."

Vail paid the $500 provided for in the contract, in accordance with its terms. He had been connected with the Curtisville Manufacturing Company prior to 1860, and with the Connecticut Arms & Manufacturing Company from its organization in 1863, and during the year 1869 was vice president of the latter company, and was individually a guarantor upon the note to the Norwich Savings Society given by the former

company in 1860, and which was secured by the mortgage. He was acquainted with the claim of the Bank of North America against the property, and knew that the value of the property exceeded the amount of the claim of the bank and the amount due the Norwich Savings Society, and in conversation with the president of the bank about the 31st day of July, 1869, the president remarked to him that he supposed the money due the Society would have to be paid soon, to which he assented.

Vail, on the 22d day of December, 1869, made a written agreement with the respondents Charles Storrs and Augustus Storrs, of the city of New York, partners under the name of Storrs Brothers, the material part of which is as follows:

"That said Vail, in consideration of $15,000 to him paid by said Storrs Brothers has sold, assigned and transferred, and hereby does sell, assign and transfer unto said Storrs Brothers, a certain contract bearing date August 16th, 1869, made between the Norwich Savings Society and said Vail, and all the rights and interest of said Vail in, to and under said contract. And said Storrs Brothers in consideration of the premises, do hereby covenant and agree to and with said Vail that, upon being paid by him at his option, at any time within the six months succeeding the 23d day of December, 1869, the sum of $15,000 with interest from the date hereof, and whatever sum or sums of money shall have been paid to the said Norwich Savings Society by said Storrs Brothers in pursuance of said contract; and also whatever sum or sums of money they shall in the meantime advance for expenses, and other charges relating to the protection and care of the property and rights hereby conveyed to them, together with interest thereon from the time of such payment or payments, said Storrs Brothers will duly convey and transfer to said Vail all the rights, title and interest that may or shall then be secured or acquired to or by them from the said Norwich Savings Society under said contract, and all their right, title and interest in said contract, and in the property therein mentioned. And in the meantime, and until such payment shall be made by said Vail, he shall have the possession and

use of said premises and shall take care thereof, as required by said contract with said Norwich Savings Society, at his own sole expense, and he shall during the same time pay all expenses and taxes which shall accrue upon or on account of the property."

Storrs Brothers thereupon paid to Vail the sum of $15,000 in cash. Some time in the month of October previous Vail had applied to them for a loan upon the property, submitting to them a correct abstract of his title to the same, certified by the town clerk from the records of Glastonbury, and his contract with the Norwich Savings Society, and they, upon examining the same, agreed to loan him the sum of fifteen thousand dollars upon the security of the property at any time when he should call for it. Storrs Brothers were, and still are, commission merchants in the city of New York, and have for many years sold goods for Vail and for the former owners of the premises, and were willing to make the loan, hoping thereby to enable Vail to get the works again in motion. On the 22d of December, 1869, Vail applied to them for the money, and as the Norwich Savings Society had not conveyed to him the premises, proposed to make to Storrs Brothers the transfer of the contract as stated in the agreement. The immediate object of Vail at that time in obtaining the money was to enable him to comply with his agreement with the Norwich Savings Society, and make payment to it on the following day of the amount called for by his contract with it. At the time Vail originally applied to them for the loan, and Storrs Brothers agreed to make it, Vail had no knowledge that the Bank of North America had not received a copy of the petition of the Norwich Savings Society or that they claimed that they had not received any notice of the petition or foreclosure, but, on the contrary, from his interviews with the president of the bank, on the 31st of July, 1869, he supposed and believed that the bank was fully aware of the proceedings, and that the bank relied upon one George B. Rogers, who had agreed to buy its interest, (but had since failed to do so,) to protect and redeem the mortgage.

Storrs Brothers, on the 22d of December, 1869, when they

advanced the $15,000 to Vail, did not know of the pendency of the present petition or that an injunction had been obtained thereon, but supposed that the title of the Norwich Savings Society and of Vail was perfect and free from incumbrance, as appeared to be the fact by the record. Vail had knowledge of the bringing of the petition, and of the fact that the injunction had been obtained, soon after the same were brought and obtained, but did not communicate his knowledge on the subject to Storrs Brothers at the time, nor afterwards when he obtained the money of them upon the loan

On the 23d day of December, 1869, Vail tendered to the Norwich Savings Society, at its banking house in Norwich, the sum due under the terms of his agreement, with a written request and order that the conveyance of the property be made to Storrs Brothers; but the society declined to make the conveyance, and gave as a reason therefor that they had been enjoined from making any conveyance of the premises.

On the 24th of October, 1869, one of the directors of the Bank of North America heard that the mortgage of the Norwich Savings Society had been foreclosed, and on the 27th of October directions were given to the counsel of the bank at Hartford to " endeavor to get a quit-claim deed if possible, but if not to take the proper steps to get a new hearing;" and the present petition, dated the 27th day of October, 1869, was brought. When the petition was brought Vail and Storrs Brothers were not made parties thereto, and at the November term of the court, to which the petition was returnable, the Norwich Savings Society filed a plea setting up the facts with regard to them, and by order of the court they were made parties respondent.

Vail has performed all things on his part to be performed by his agreement to entitle him to a conveyance from the Norwich Savings Society, and the latter would have conveyed, and would now convey, their interest in the property to Storrs Brothers, except as restrained by the injunction.

None of the officers of the Norwich Savings Society, nor its attorney, had any knowledge or suspicion that the Bank of North America had not received the notice of the pendency

of the petition, at the time the agreement between the Society and Vail was made, neither had Vail knowledge of the same, but both parties acted upon the supposition that full and legal notice had been received by the bank. The first knowledge that either had of the claim of the bank that it had not received the notice was by the bringing of the present petition.

The real estate in question is of greater value than the amount of the two mortgage claims held by the Norwich Savings Society and the petitioners, and the sum advanced thereon by Storrs Brothers, to wit, of the value of $75,000 and upwards.

Vail, on the 24th of August, 1869, employed a new man to hold possession and take care of the property for him. He also obtained further insurance on the buildings on the premises to the amount of $10,000 for the benefit of the Norwich Savings Society, and as premiums for insurance, payment for watchmen required by the insurers, repairs and other expenses of a similar character, he has expended between $2,000 and $3,000. He has, during the time since August 24th, 1869, occupied a portion of the premises as a place for storage and for manufacturing purposes. A reasonable rent for that portion occupied for manufacturing purposes would be $100 per month. During a portion of the time the premises were occupied by others, upon whom Vail has a claim for storage to the amount of $1,200, for which he has commenced a suit, and attached property to secure the same, and the suit is now pending and being defended. The Norwich Savings Society has paid taxes on the property since the 23d day of August, 1869, amounting to $710.89. Its claim, including the taxes, with interest, amounted on the 1st day of August, 1870, to $15,926.54.

The Connecticut Arms & Manufacturing Company is insolvent, and the petitioners have no means of obtaining payment of their claim except the mortgage.

Upon these facts the case was reserved by the Superior Court for the advice of this court.

*C. E. Perkins*, for the petitioners.

The petitioners are entitled to a decree opening the foreclosure suit and fixing a further time for redemption.

1. This right is very clear as against the Savings Bank. Rev. Stat., tit. 1, sec. 200; id., tit. 18, sec. 9; *Carrington* v. *Holabird*, 17 Conn., 530; *Bridgeport Savings Bank* v. *Eldredge*, 28 id., 556; *Day* v. *Welles*, 31 id., 344; *Seymour* v. *Miller*, 32 id., 402; *Bostwick* v. *Stiles*, 35 id., 195; *Seymour* v. *Davis*, id., 264.

2. It is claimed however that the respondent Vail has certain rights which make it unjust as against him that the foreclosure should be opened. This claim is founded upon the agreement made between Vail and the Savings Bank, that if the present petitioners did not redeem the Savings Bank would convey the property to him upon certain terms agreed. But under this agreement Vail takes only the rights of the Savings Bank whatever they might be, and if those rights were subject to the equitable right of the petitioners to have the foreclosure opened and to redeem, then Vail's rights are subject to the same equity. Besides, the contract is merely executory, and all that is needed is to prevent its performance, which will do no wrong to Vail, for he can clearly recover back the $500 paid by him to the Savings Bank, it having been paid under a mistake of fact and upon a consideration that has failed. Again, Vail was to have the right to take the property only in case the present petitioners did not redeem. They are now seeking to redeem, and if the court shall find that they have an equitable right to do so then the contract would fail by its own terms. Again, Vail is only an assignee *pendente lite*, and if an actual conveyance had been made it would not have been good against the petitioners. *Norton* v. *Birge*, 35 Conn., 250; Story Eq. Pl., § 156; 1 Story Eq. Jur., § 406; 2 id., § 908. Besides all this Vail is clearly chargeable with knowledge of the facts and with an intention and attempt to take a fraudulent advantage of the petitioners. This consideration alone is sufficient to destroy all equitable claim in his favor.

3. But it is insisted that if Vail has no equitable right against the relief sought by the petitioners, yet Storrs Brothers, the other respondents, have such an equitable right. But

Storrs Brothers are only assignees of the contract of the Savings Bank with Vail and have therefore no better rights. than Vail. No matter how many times the contract is assigned, no one interested can get any other right than the Savings Bank had or acquire any new equity against us. The $15,000 paid by Storrs Brothers to Vail upon the assignment of the contract cannot affect us. It can make no difference to us whether it was $1,000 or $50,000. But the $15,000 was in fact the money which Vail was to pay to the Savings Bank upon redemption, and it was paid by Storrs Brothers to Vail as their agent for that purpose. Being now in Vail's hands it is in law in their own hands, and is to be regarded as if it had never been advanced at all. It is not alleged in their answer, nor found as a fact by the court, that Vail is insolvent. They are therefore not only entitled to a repayment of the money by him, but can in fact recover it, so that their payment of the $15,000 is to be laid out of the case. Thus they would be subjected to no injury, even if they stood upon independent ground and had an independent equity to be considered. But they in fact stand only in the shoes of Vail, and every consideration that is applicable to him is applicable to them. The fact of Vail's concealment of facts from them can not affect us. Whatever may have been his fraud toward them, their equity against our right to redeem is not made any stronger by it.

*Hovey* and *Halsey,* for the respondents.

*First.* Upon the facts found the prayer of the petition ought not to be granted.

1. The Norwich Savings Society has obtained a decree of foreclosure before a court of competent jurisdiction, upon regular and legal process, in conformity to the laws of this state, where the mortgaged premises are situated. Notice of the pendency of the suit was given to the Bank of North America, in pursuance of the provisions of the statute which provides for the service of petitions in equity upon non-residents. Gen. Statutes, tit. 11, sec. 127.

2. By the decree the title of the Norwich Savings Society

to the mortgaged premises became absolute. The title to immovable property is governed by the *lex rei sitæ.* Story Confl. of Laws, (6th ed.,) §§ 535, 592, 592*a*, 593, and cases cited.

3. The Norwich Savings Society having obtained an absolute title by virtue of the decree and failure of all parties to redeem, could sell and convey the property, and a *bonâ fide* purchaser from it without notice of any equity in any of the parties to háve the decree opened, could not be disturbed in his title. 2 White & Tud. Lead. Cas. in Eq., 49, 52, 61, 69, 82, 85; *Weiss* v. *Alling,* 34 Conn., 64; *Youst* v. *Martin,* 3 Serg. & R., 423; *Bellas* v. *M'Carty,* 10 Watts, 13; 1 Story Eq. Jur., §§ 64*c*, 108, 409, 434. It is found that both the Society and Vail supposed that the Bank of North America had received the notice which was ordered, and that it would redeem if it desired to; and that Vail from his interview with the president of the bank on the 31st of July, 1869, believed that the bank was fully aware of the foreclosure proceedings, and relied upon one Rogers, with whom it had made a contract to sell its interest in the property, to protect and redeem the mortgage. The agreement of August 16th, 1869, between the Society and Vail, was therefore entered into in entire good faith. Storrs Brothers have acquired an interest in the property, in good faith, for a valuable consideration paid, without notice of any equity outstanding in the petitioners, and relying upon the record title. They could have no higher equity if the Society had made them a mortgage to secure a loan of $15,000 on the property, and it is well settled that a mortgagee is a purchaser. 2 White & Tud. Lead. Cas. in Eq., 82, 85. And they are not affected by the notice which Vail possessed at the time they actually advanced the money. Neither is their title affected by the pendency of this suit at the time against the Norwich Savings Society. The person from whom they derive their interest was not then a party to it. *Norton* v. *Birge,* 35 Conn., 250. A *lis pendens* cannot operate as notice to parties who reside beyond the jurisdiction of the court in which the suit is brought, even when the property in question lies within the jurisdiction.

2 White & Tud. Lead. Cas. in Eq., 175 ; *Shelton* v. *Johnson*, 4 Sneed, 672 ; 1 Story Eq. Jur., § 405 ; Adams' Eq., 157.

4. The Savings Society ought to be permitted to execute a conveyance of its interest in the property according to its agreement. It is found that Vail has fully performed the agreement on his part, and that, as against the Savings Society, Storrs Brothers are entitled to a conveyance, and that the Society would have conveyed and would now convey to them, except as restrained by injunction. Vail had made a payment on the purchase, and had made other expenditures in pursuance of the agreement, prior to any notice of the claim of the petitioners. The Society is not in fault, and ought not to be subjected to the chances of litigation with Vail or Storrs Brothers in regard to the agreement.

5. If the prayer of the petitioners is granted, and the decree in favor of the Savings Society is opened, and the case brought forward on the docket for a new trial, the rights of Vail and Storrs Brothers cannot be protected. They are not parties to that suit. The petitioners must bring a petition making proper parties, where the rights of all can be protected. The present petition contains no admission of the rights or incumbrances of Vail or Storrs Brothers, and makes no offer to redeem them. It is insisted, therefore, that the petition should be dismissed.

*Second.* If the court should be of opinion that the petitioners are entitled to redeem, and that it can and will upon this petition, and upon the answers and the facts found, settle the terms upon which such redemption shall be made, it is insisted that such redemption should only be allowed upon the condition of re-payment to Vail and Storrs Brothers of all sums which they have respectively advanced or expended upon the property in consequence of the agreement before notice of the claim of the petitioners.

1. As before shown, the contract between the Savings Society and Vail was entered into in entire good faith, and without knowledge or suspicion that the Bank of North America had not received its notice. The first knowledge they had of the claim was by this petition. Neither of the parties

were in fault in respect to the notice. Both were equally innocent. The Savings Society had done all that the law required of it. The laches and neglect of the bank to redeem the mortgage or pay up the interest, so long in arrears, has led to its misfortune. It can only have equity by doing equity. Innocent third persons must not suffer by its neglect.

2.    Storrs Brothers have invested $15,000 in this property. It is found that the entire transaction was in good faith. They relied upon the record evidence of the title, which was correctly submitted to them. The agreement originally was for a loan on the property, which they consented to make as an accommodation to Mr. Vail, hoping that he would thereby be enabled to get the works again in motion. When they so agreed Vail had no suspicion that his title to the property was not perfect. Finally, when they paid the $15,000 they took a transfer of Vail's contract with the Society, and became entitled to a conveyance in fee, subject to his right to a reconveyance upon the payment of that sum and interest within six months. They thus became purchasers for value. It is distinctly found that they had no knowledge of the claim of the bank or of the pendency of this petition at that time, " but supposed that the title of the Savings Society and Vail was perfect and free from incumbrance, as appeared of record." Their equity is strong, and superior to that of the petitioners. The knowledge which Vail possessed at the time he conveyed to them cannot affect their equity.    2 White & Tud. Lead. Cas. in Eq., 83, 84, 85 ; McSorley v. Larissa, 100 Mass., 270.

3.    Though payment in full is necessary to constitute a good bar by plea, yet it is generally held that payment of part of the purchase money before notice, although not sufficient to invest the vendee with the character of a bonâ fide purchaser as it regards the estate purchased, gives him a right to invoke the aid of the equitable principle that he who would claim equity must do it, and require reimbursement from the rightful owner as the condition of giving way to his title.    2 White & Tud. Lead. Cas. in Eq., 102, 116, 117, 119.    In this case the title of the petitioners in the premises has become barred both at law and in equity.    They come into a

court of equity asking relief. It is at least optional with the court to grant or withhold it, even if the rights of third parties had not intervened. Where they have intervened, as in this case, those rights must be protected. Those who would have equity must do equity.

4. The petitioners allege that the value of the property is greater than. the whole sum due the Savings Society, and the amount of their own incumbrance, and it is found that its value is greater than these amounts and the amount advanced by Storrs Brothers. If the prayer of the petition is granted the petitioners will take the whole for their incumbrance and that of the Savings Society, to the prejudice of Vail and Storrs Brothers, who will lose all, while the petitioners will get more than their debt.

SEYMOUR, J. This is a bill in equity to open the foreclosure of a mortgage. The Norwich Savings Society held the first mortgage upon a manufacturing establishment in Glastonbury. The Bank of North America, the present petitioner, held a second mortgage and had foreclosed the mortgagors and all subsequent parties. Then the Savings Society obtained the decree of foreclosure against the Bank of North America, which decree is now sought to be opened. In the petition on which this last mentioned foreclosure was obtained an order of notice was duly made and duly complied with, ordering notice to the respondents in that case (the petitioners in this) by letter through the post office. The letter was not received, and the Bank of North America had no knowledge of the proceedings against them or of the decree until a few days after the time limited for them to redeem had expired. They thereupon immediately filed the present petition to open the foreclosure.

Upon these facts the case is a clear one. The failure of the notice to reach the Bank of North America is an accident which is to be relieved against upon the familiar principles of a court of equity, unless there are special reasons against such relief being granted. The respondents claim that such special reasons exist in this case. Shortly before the time

limited in the decree for redemption one Thomas J. Vail entered into a contract with the Savings Society to purchase from it its right, title and interest in the mortgaged premises, provided the redemption should not take place. No redemption being made Mr. Vail paid $500 on the contract. No further execution of the contract occurred before the bringing of the present petition and the granting of a temporary injunction against completing the agreement. The pending petition was brought October 17th, 1869. On the 22d of December, 1869, Mr. Vail entered into an agreement with Storrs Brothers of New York, transferring to them all his rights under the contract between himself and the Savings Society as security for $15,000 lent to him by Storrs Brothers on the faith of the transfer as security. Storrs Brothers were ignorant of the pendency of the petition and injunction, and supposed that the title of Vail and the Savings Society was perfect. Mr. Vail knew of the petition and injunction soon after they were brought, but did not communicate his knowledge to Storrs Brothers, and he had procured of the town clerk of Glastonbury an abstract of the title which showed the property to be freed by the foreclosure from its incumbrances; which abstract was examined by Storrs Brothers before they made their advance of money to Mr. Vail. The debt of the Savings Society is about $15,000; the value of the premises about $75,000. Mr. Vail had been connected with the property for many years and was acquainted with the claim of the present petitioners upon it, and he knew that the value of the property exceeded the amount of both mortgages. As late as July 31st, 1869, he had a conversation with the president of the Bank of North America, in which the president remarked that he supposed the money due the savings bank would have to be paid soon; to which Mr. Vail assented. Upon these facts we think it clear that Mr. Vail is in no better condition to resist the opening of the foreclosure than the savings bank is. He had reason to know that the failure to redeem was an accident, and he has done nothing in execution of his agreement with the savings bank except

to pay $500, which he can recover back if he paid it in good faith and under an innocent mistake.

But in behalf of Storrs Brothers it is strenuously insisted that they have advanced $15,000 on the faith of a title apparently good, and vouched by the town clerk to be a good title so far as appeared on the town records. Storrs Brothers claim that the legal title is in the savings bank, and that by virtue of the assignment to them of the contract between that bank and Vail, they acting in good faith have an equitable title equal to, and indeed superior to, the equitable rights of the Bank of North America.

We are called on then to examine with care the comparative equities of these two parties.

The Bank of North America had a valid mortgage on the premises. No neglect or fault of any kind is imputable to them. By mere accident a decree of foreclosure has been obtained of their mortgage without notice. Their title is prior in point of time to that of Storrs Brothers.

In respect to Storrs Brothers,—1st. Their title is by, under, and through Mr. Vail, and we have already seen that he has no equitable rights which can prevail against the petitioners.. 2d. It does not appear that Vail is insolvent. 3d. Although no bad faith is imputable to Storrs Brothers, yet the contract which was transferred to them was somewhat extraordinary in its nature. It must have been apparent to them that the property foreclosed greatly exceeded in value the amount of the debt of the savings bank, and this fact and other facts in the case would naturally suggest to every careful man the idea that the failure of the Bank of North America to redeem must have been the result of some accident or mistake.

We are then of the opinion that the equitable rights of the Bank of North America are prior in time and superior in merit to those of Storrs Brothers.

The original claim of the Bank of North America is as mortgagee, and if their mortgage debt is paid they ought to be satisfied; and it is agreed by the parties that Mr. Vail and Storrs Brothers may take the premises upon the payment

Bank of North America *v.* Norwich Savings Society.

to them of their debt and upon payment also to the Savings Society according to the contract between the latter and Mr. Vail.

The Superior Court is advised to make its decree accordingly.

The court has been consulted by the parties and has advised informally in relation to several minor points arising in the case touching the account for rents and profits by Mr. Vail while in possession, but the questions involved are not of an interest sufficiently general to be reported.

In this opinion the other judges concurred.